# CHARLESTON.

GREENBRIER LUMBER CO. *v.* WARD *et al.*

Submitted January 28, 1892.—Decided April 16, 1892.

1. CONTRACT—SET-OFF.

A firm contracts with a lumber company on the 1st day of May, 1879, to deliver on the banks of a certain stream, secure from high water, and at a convenient place to roll into the same, and below a certain milldam, from two to five hundred thousand feet of black walnut timber, to be of certain specified dimensions, and said lumber company agrees to pay therefor twelve dollars and fifty cents per M., and, to scale up and pay for same when four or five hundred dollars' worth shall have been hauled in, and it shall be notified thereof; two hundred dollars of which purchase-money was paid down, and three hundred dollars by check in thirty days thereafter. The said lumber company, having received no portion of said timber, brought an action of *assumpsit* to recover the five hundred dollars so paid from said firm, which claim said firm seeks to set off by filing a claim for nine thousand feet of walnut lumber at the contract price of twelve dollars and fifty cents per M., aggregating one hundred and twelve dollars and fifty cents. *Held :* 1. The law requires, as a condition precedent to the recovery of said set-off, a compliance with the terms of said agreement, not only as to the time and place of delivery, but as to the dimensions and quality of the lumber ; and the court should so instruct the jury, if required.

2. CONTRACT.

As to the time of delivery, the law supposes, in the absence of evidence to the contrary, a reasonable time, unless a definite time is fixed by agreement; but, if a definite time was set, this is of the essence of the contract, as between the parties.

3. CONTRACT.

Where the quantity to be delivered is fixed by the agreement the seller must deliver just what he bargained to deliver—no more and no less ; and in general the seller has no right to deliver a quantity in excess of that ordered.

4. CONTRACT.

If the quantity delivered is less than that sold, it may be refused by the purchaser ; and if the contract be for a specified quantity, to be delivered in parcels from time to time, the purchaser may return the parcels first received, if the latter deliveries be not made, as the contract is not performed by the vendor's delivery of less than the whole quantity sold.

*A. C. Snyder* for plaintiff in error cited Benj. Sales (1st. Am. Ed. Perk.) §§ 689, 690; 5 Waite A. & D. 571; 13 Wend. 258; 14 Conn. 518; 18 Vt. 27; 28 W. Va. 639.

*O. Johnson* for defendant in error cited 17 W. Va. 683; 3 Cr. 298; 99 U. S. 578; 6 W. Va. 388; 7 W. Va. 348; 6 W. Va. 110; 16 W. Va. 307; 21 W. Va. 709; 26 W. Va. 116; 21 W. Va. 741; Id. 486; 30 W. Va. 27.

ENGLISH, JUDGE:

This was an action of *assumpsit* brought in the Circuit Court of Roane county by the Greenbrier Lumber Company, a corporation, against James T. Ward and P. G. Cunningham, late partners doing business under the firm name of Ward & Cunningham. The declaration contained only the common counts, and was demurred to by the defendants, and the demurrer was overruled, no cause being assigned therefor; and the propriety of the action of the court in overruling said demurrer was passed upon by this Court when this case was before it in the year 1887, holding that the same was properly overruled. The items of account sued for are set forth in a bill of particulars which was filed with said declaration, and is as follows:

"Ward & Cunningham, Dr. to the Greenbrier Lumber Company:
1879. May 1. To amount paid you on contract for timber, which contract is in writing dated May 1, 1879, signed by you, a copy of which is herewith filed as part hereof, marked 'No. 1' .................................................................................... $200 00
May 21. To amount paid you on said contract.. ..................... 300 00

                                                                                  $500 00"

Said agreement reads as follows: "This agreement, made and entered into this 1st day of May, 1879, between J. T. Ward and P. G. Cunningham, merchants and partners, trading and doing business in the firm name and style of Ward & Cunningham, at Walton, Roane county, West Va., parties of the first part, and the Greenbrier Lumber Company, by J. M. Boggs, their agent, party of the second part, witnesseth that the parties of the first part hereby agree and bind themselves to purchase, secure and have delivered on the banks of Pocatalico river, secure from high water, and in a convenient place to roll into the same,

where the said stream is sufficiently large enough to raft the same (and below the Walton milldam) from two to five hundred thousand feet of merchantable black walnut timber, and not less than two hundred thousand feet, to be cut in ten, twelve, fourteen, and sixteen feet lengths, the principal part to be twelve and fourteen feet, all to be sound and straight timber, and to average twenty four (24) inches diameter at the top end of the log, and none to be less than eighteen inches diameter top end of the log, which is to be delivered against the first of February next. Said party of the second part, on their part, agree to pay twelve dollars and fifty cents per M. feet, and to be reckoned (scaled) according to Scribner's Log and Lumber Book, 'Doyle's rule,' for reducing round logs to inch board measure; two hundred dollars this day paid to said parties of the first part, and receipt hereby acknowledged; three hundred dollars more to be paid them by sending them a check for that amount within thirty days from this date; balance to be paid as fast as timber can be gotten on the banks of said stream as aforesaid, after being scaled up and branded with the company's brand, in proportion to the amount then delivered, deducting a *pro rata* amount of said advancement, according to the number of M. feet so measured. Said party of the second part agree to scale up and pay for same when four or five hundred dollars worth shall have been hauled in, after being duly notified by said first parties. Any timber that said parties may secure above the Walton milldam shall be measured before putting into the water, but to be put down below said dam, rafted in batches of eight or ten logs, at the risk of said first parties, but not to be done until after the danger of next winter's ice is past, then to be made fast and turned over to said second parties; that is, the expense of rafting same, and lines put on, to be paid by second parties.

"Given under our hands this first day of May, 1879.

"WARD & CUNNINGHAM.

"GREENBRIER LUMBER COMPANY.

"By J. M. BOGGS, Agent.

"Received of the Greenbrier Lumber Company, by J. M. Boggs, three hundred dollars, this 21st day of May, 1879.

"WARD & CUNNINGHAM."

The defendants pleaded *non assumpsit* and payment, and on the 31st day of March, 1888, the issue was submitted to a jury, who rendered a verdict for the defendants. Said verdict, on motion of the plaintiff, was set aside by the Court; and upon the 27th day of August, 1890, said case was again submitted to a jury, who again found a verdict for the defendants. The plaintiff thereupon moved the Court to set aside the verdict and grant it a new trial, which motion was overruled by the Court, to which ruling and action of the Court the plaintiff, by its counsel, excepted, and tendered a bill of exceptions containing a certificate of facts which was signed, sealed and made a part of the record of the case, and judgment was rendered on said verdict, from which judgment the plaintiff applied for and obtained this writ of error.

Upon the trial of said case, it appears that the plaintiff asked the court to give the jury the three following instructions :

"No. 1. The jury is instructed that under the written contract in this case the defendants were required to deliver for the plaintiffs not less than two hundred thousand feet of black walnut timber, of the quality and dimensions mentioned in the contract, by the 1st day of February, 1880, on the banks of Poca, secure from high water; and, if the jury believe from the evidence that there was an essential deficiency in the quantity to be delivered, then the plaintiffs were not bound to accept or pay for the said amount of timber there delivered, and the jury can not find anything in favor of the defendants against the plaintiffs on account of said timber, nor can the jury offset the same against the demand of the plaintiff.

"No. 2. The jury is instructed that under the written agreement in this case the defendants were required to deliver for the plaintiff not less than two hundred thousand feet of black walnut timber of the quantity and dimensions mentioned in the agreement, on the banks of Pocatalico river, secure from high water; and, if the jury believe from the evidence that such timber as was delivered was not delivered secure from high water, then the jury can not find anything in favor of the defendants against the plaintiffs on

account of such timber, although the jury may believe it was afterwards carried away by high water.

"No. 3. If the jury believe from the evidence that the defendants were to furnish at laast two hundred thousand feet of walnut logs, to average twenty four inches at top of the log, and not to be less than eighteen inches, on the 1st of February, 1880, and that said defendants failed to have that quantity of walnut timber on the banks of Poca, according to the contract, then the plaintiff was not bound to accept and pay for the whole amount, or any part thereof; and the jury can not find anything for the defendants for any logs that may have been put on the banks of Poca, less than the quantity required by the contract."

The defendant objected to the giving of said three instructions, or any of them, and the court sustained the objection and refused to give either of said instructions to the jury, to which ruling of the court the plaintiffs excepted; and the first error relied on by the plaintiff is as to the action of the court in refusing said instructions.

In order that we may arrive at a correct conclusion as to whether said instructions were proper or improper, it is necessary that we should consider the terms and provisions of said written agreement in connection with the testimony in the case, and, under the rule, we must disregard the evidence offered by the exceptor that is in conflict with the evidence of the exceptee, and give full credit to the latter; the party excepting being held to admit, not only the facts fairly proven by the exceptee, but those which may be fairly inferred by the jury.

By reference to said written agreement, it will be perceived that the parties of the first part bound themselves to purchase, secure, and have delivered on the banks of Pocatalico river, secure from high water, and in a convenient place to the same, where the said stream is sufficiently large to raft the same (and below the Walton milldam) from two to five hundred thousand feet of merchantable black walnut timber, and not less than two hundred thousand feet, to be cut in ten, twelve, fourteen, and sixteen feet lengths, the principal part to be twelve and fourteen feet, all to be sound and straight timber, and to average twenty four

inches diameter at the top end of the log, and none to be less than eighteen inches in diameter, top end of log, which was to be delivered against the 1st of February, 1880. This portion of the agreement prescribes the obligations which were incumbent upon the defendants, Ward & Cunningham, by the terms of said agreement; and the remaining portion of the agreement sets fourth the obligations which were incumbent upon the plaintiff, to wit, the said party of the second part agreed to pay twelve dollars and fifty cents per M. feet, to be reckoned (scaled) according to Scribner's Log & Lumber Book, "Doyle's rule," for reducing round logs to inch board measure, two hundred dollars of which purchase-money was paid down, and three hundred dollars was to be paid in thirty days by sending said parties of the first part a check for that amount; the balance to be paid as fast as the timber could be gotten on the banks of said stream, as aforesaid, after being branded and scaled up, in proportion to the- amount then delivered, deducting a *pro rata* amount of said advancement according to the number of thousand feet so measured; and said party of the second part agreed to scale up and pay for same when four or five hundred dollars' worth shall have been hauled, after being duly notified by said first parties, and any timber that said parties might secure above the Walton milldam should be measured before putting into the water, but to be put down below said milldam, rafted in batches of eight or ten logs, at the risk of said first parties, but not to be done until after next winter's ice was passed, and then to be made fast and turned over to said second parties; the expense of lines and rafting to be paid by said parties of the second part. In order that said Ward & Cunningham should be entitled to the purchase-money or payment for walnut timber delivered on the banks of said river, it was not only necessary that they should deliver timber of the dimensions and quality specified in said agreement, but thay must also have complied with said agreement by delivering said timber at the place agreed upon, secure from high water, at a convenient place to roll in the river; and they must have so purchased, secured and placed, below the Walton milldam, from two to five hun-

dred thousand feet of such timber, and this timber must have been so secured and placed by the 1st of February, 1880.

In order that we may determine whether the defendants, Ward & Cunningham, complied with their portion of said contract, so as to enable them to call for a compliance on the part of said company, we need only look to the testimony of Cunningham. He states on cross-examination that the defendants had the quantity of timber and of the value mentioned in their account of offsets (that is, as shown by the old record, nine thousand feet) and in addition thereto that they had from five thousand to ten thousand feet in excess that was not measured and scaled up, and that the quantity not measured and scaled up nearly equaled the quantity mentioned in said offsets, claiming that they had at least one thousand five hundred dollars worth below the milldam, when the whole amount, measured and unmeasured, as stated by him, only amounted to nineteen thousand feet, which at the contract price would amount to only two hundred and thirty seven dollars and fifty cents; and the fact proven that what logs they had purchased and placed on the banks were not so placed in accordance with the contract is shown by said Cunningham's statement that the logs that were left there were washed away by high water. Again, the said logs were to be scaled up and paid for when four or five hundred dollars' worth should have been hauled in, and the party of the second part duly notified. It does not appear that this quantity of logs, complying with the terms of the contract, was ever hauled in, or that the party of the second part was ever so notified.

Now, as to the first instruction excluded by the Court, in which it was proposed to instruct the jury that under the agreement in this case the defendants were required to deliver not less than two hundred thousand feet of black walnut timber of the quality and dimensions mentioned in the contract by the first of February, 1890, on the banks of Poca, secure from high water, and that if the jury believe from the evidence there was an essential deficiency in the quantity to be delivered, then the plaintiffs were not bound to accept or pay for the said amount of timber there deliv-

ered, and the jury could not find anything in favor of the defendants against the plaintiff on account of said timber, nor could the jury offset the same against the demand of the plaintiff. There was certainly some evidence tending to show that the defendants had not complied with their part of said contract, and, while said Cunningham states that they had at least one thousand five hundred dollars worth of timber below the Walton milldam, yet he does not state that it was such timber as would be received under this contract; and, again, when he gives the number of feet they have secured in separate lots of logs, it only foots up ten thousand, or two hundred and thirty seven dollars and fifty cents worth of of timber, which he claims was ready to be measured and scaled. . Said first instruction, in substance, merely told the jury that unless said Ward & Cunningham had complied with their contract as to the time and place of delivery, and the amount and quality of the timber, they could not be allowed the set-off they claimed. 2 Schouler, Pers. Prop. § 386, says:

"As to the time of delivery, the law supposes, in the absence of evidence to the contrary, a reasonable time; and, whether the seller or buyer is to take the initiative, reasonable diligence will be exacted—no more, no less— unless a definite time was set. But, if a definite time was set, this is of the essence of the contract, as between the parties."

See *Higgins* v. *Railroad Co.*, 60 N. Y. 553; *Corwith* v. *Colter*, 82 Ill. 585; *Bolton* v. *Riddle*, 35 Mich. 13; and *Kellam* v. *McKinstry*, 69 N. Y. 264.

As to the quantity to be delivered, 2 Schouler, Pers. Prop. § 388, says:

"We next consider the quantity which the seller is bound to deliver. How much shall be delivered depends upon the terms of the contract, and as a rule the seller must deliver just what he bargained to deliver—no more and no less. He has no right to mix the goods ordered with others not ordered, and so put the buyer to the alternative of taking the whole or selecting his portion; nor, in general, to deliver a quantity in excess of that ordered."

Benj. Sales, p. 537, § 593, says: "In determining whether

stipulations as to the time of performing a contract of sale are conditions precedent the court seeks simply to discover what the parties really intend; and if time appear, on a fair consideration of the language and the circumstances, to be of the essence of the contract, stipulations in regard to it will be held conditions precedent."

So, also, we find, in reference to quantity, the same author lays down the rule in sections 689 and 690 as follows:

"689—As a general rule the buyer is entitled to refuse the whole of the goods tendered, if they exceed the quantity agreed; and the vendor has no right to insist upon the buyer's acceptance of all, or upon the buyer's selecting out of a larger quantity delivered."

"690—If, on the other hand, the delivery is of a quantity less then that sold, it may be refused by the purchaser; and if the contract be for a specified quantity, to be delivered in parcels from time to time, the purchaser may return the parcels first received if the later deliveries be not made; for the contract is not performed by the vendor's delivery of less fhan the whole quantity sold."

Again, in the case of *Champlin* v. *Rowley*, 13 Wend. 258, the Supreme Court of New York held: "Where a vendor agreed to sell a specific quantity of an article of merchandise, as, for example, one hundred tons of pressed hay, and to deliver the same within a given period, for which the vendee agreed to pay at a specified price, one hundred dollars in advance, and the residue when the whole quantity should be delivered, and the vendor delivered fifty tons, but omitted to deliver the residue, it was held that the vendor was not entitled to recover for the portion delivered unless the delivery of the residue was prevented by the vendee." See, also, *Wright* v. *Barnes*, 14 Conn. 518; 5 Wait, Act. & Def. 571.

Under these authorities, we can arrive at no other conclusion than that the delivery of the logs by the defendants in accordance with their contract was a condition precedent to their right to have any portion of their bill of set-off allowed; and, even if it had been shown by the evidence that one thousand five hundred dollars worth of timber had been delivered, it could not be regarded as a com-

pliance with the contract, because the least quantity the plaintiff agreed to accept was two hundred thousand feet, which at twelve dollars and fifty cents per M would be two thousand five hundred dollars, and if one thousand five hundred dollars worth had been received, the plaintiff had the right to return it, if the residue was not delivered by February 1, 1880; and there is no evidence that the plaintiff ever received any portion of said logs, or that the quantity contracted for was ever delivered either before or after the 1st day of February, 1880.

For these reasons, we are of opinion that the court below erred in refusing to give said instructions to the jury, and in refusing to set aside said verdict; and the judgment complained of must be reversed, the verdict set aside, and the cause remanded, with costs to the plaintiff in error.

REVERSED.   REMANDED.