## CHARLESTON.

FOX v. RITTER-BURNS LUMBER COMPANY.

Submitted September 19, 1922.    Decided September 26, 1922.

1. SALES—*One Not Obligated to Accept Quantity of Manufactured Articles Substantially Less Than Contracted for.*
   One who contracts for the purchase of a certain quantity of an article, to be thereafter manufactured by the seller, is under no obligation to accept, in satisfaction of the contract, a substantially less quantity than that contracted for. (p. 546.)

2. SAME—*No Obligation to Accept Execution of Contract Not in Accordance with Terms.*
   One who purchases a definite quantity of lumber, to be manufactured in a particular manner, is under no obligation to accept lumber offered in fulfillment of the contract not manufactured in accordance with its terms.    (p. 546).

3. SAME—*Advancements on Violated Contract of. Sale May be Recovered as a Set-Off in Action for Price.*
   Where one enters into a contract for the purchase of a definite quantity of lumber, to be thereafter manufactured in accordance with certain requirements contained in the contract, and makes certain advancements to the seller in accordance with a provision contained in the contract therefor, he may, in a suit brought by the seller to recover the

91 W. Va.

price of the lumber offered in fulfillment of the contract, set up such advancements as an offset and recover the whole amount thereof against the seller in case the jury finds that the lumber offered by the seller in satisfaction of the contract did not meet the requirements thereof.   (p. 548).

Error to Circuit Court, Summers County.

Action by J. A. Fox against the Ritter-Burns Lumber Company.  Judgment for the defendant, and plaintiff brings error.

*Affirmed.*

*T. N. Read* and *R. F. Dunlap,* for plaintiff in error.

*Wm. H. Sawyers,* and *Williams, Scott & Lovett,* for defendant in error.

RITZ, JUDGE:

The plaintiff in this suit complains of a judgment of the Circuit Court of Summers county which denied him the right to recover for lumber which he claims he delivered to the defendant upon a certain contract.

The suit was brought to recover upon two contracts.  The first consisted of an order given to the plaintiff by the defendant for one carload of long run hickory 8/4, at $80.00 per thousand, to be loaded in 30 to 45 days, well manufactured, and all bad ends trimmed off before loading, and to be shipped to the defendant at Muncie, Indiana. The plaintiff says he received this order about the day of its date, to-wit, February 26, 1920, and that he manufactured the lumber called for therein and had it ready for loading within the time provided in the contract, but that he never loaded it or shipped it, as provided for therein. In the month of July the defendant gave him notice that inasmuch as he had not complied with his contract to ship the lumber up to that time, it would refuse to receive the same thereon.  He contested defendant's right in this regard, and shortly thereafter the lumber was destroyed by fire, and one of the items sued for in this case is the value of this car of lumber, to-wit, $800.00.  The jury found for the plaintiff for this item.  It is a little hard to understand

upon what theory this finding was made, inasmuch as the contract of the parties provided that the plaintiff was to load and ship this lumber to the defendant at Muncie, Indiana, and at the time it was destroyed by fire he had not done the things which his contract required him to do. The defendant, however, does not complain of the action of the court in regard to this carload of hickory, no doubt because of the fact that the lumber was insured, and the real owner will receive compensation therefor from an insurance company. We are not, therefore, called upon to concern ourselves with this transaction.

The other matter involved in the suit, and which is the subject of the contention on this writ of error, arises out of a contract in writing entered into between the parties on the 24th day of May, 1920. By that contract the plaintiff agreed to sell and the defendant agreed to buy all the merchantable lumber manufactured, and to be manufactured, at the plaintiff's sawmill site located on the land of George Gilpin, to be not less than 100,000 feet, and not to exceed 140,000 feet, to be mill run oak, that is, No. 3 common and better, the party of the first part, however, to reserve 6000 feet of the mill run oak and 6000 feet of soft wood for his own use. The contract provides that all lumber was to be mill run grade, well manufactured and trimmed, and cut according to specifications furnished by the defendant, and delivered to the defendant at Hinton, West Virginia. The contract provided further that the lumber was to be manufactured as soon as possible, and the price to be paid therefor was $50.00 per thousand feet. The sum of $25.00 per thousand feet was to be advanced when the lumber had been properly sawed and piled on the yard upon estimates made by C. C. Brown, the defendant's agent, and the other $25.00 per thousand feet within ten days after the lumber was loaded and shipped. By the terms of the contract the plaintiff expressly bound himself to see that the said lumber was well manufactured and trimmed in a good workmanlike manner.

It appears from the evidence that at the time this contract was entered into the plaintiff had already cut a very small amount of the lumber, the subject matter of the contract. In the month of June the defendant's agent Brown, at the request of the plaintiff, went to the plaintiff's mill yard and found that the plaintiff had cut a considerable quantity of the lumber. He says, however, that it was not cut in accordance with the directions given, and was not trimmed as required by the contract; that he called the plaintiff's attention to this and advised the plaintiff that he would not make any estimate upon which an advancement could be obtained until the lumber was cut in compliance with the contract; that the plaintiff insisted upon his making an estimate so that he might procure some funds to carry on his operation, and that upon the promise of the plaintiff to correct the defects he did make an estimate in favor of the plaintiff for $512.50, and that the defendant did pay this amount to the plaintiff at that time. Plaintiff admits that Brown called his attention to the fact that the lumber was not cut in accordance with the contract, but he denies that he made any promise to correct the defects therein. Subsequently, in the month of July, Brown made another estimate for $600.00 which was paid to the plaintiff, according to Brown, under substantially the same circumstances. Several months later the plaintiff called upon the defendant's agent Brown and advised him that he had completed the cutting of the timber, and asked him to inspect and accept the lumber. Part of it was at that time upon the mill yard, and part of it had been delivered upon the station grounds at Hinton ready to be shipped. The plaintiff represented that he had 99,600 feet of the lumber ready for delivery in satisfaction of the obligation of his contract. Brown at once examined the lumber and advised plaintiff that he would not accept the same in satisfaction of the contract, for the reason that he did not have anything like the amount called for in the contract, and also for the reason that the lumber was not manufactured in accordance with the terms thereof, and that it was not trimmed and

edged in a workmanlike manner. Upon Brown's refusal to accept and pay for the lumber plaintiff brought this suit. After the suit was brought the plaintiff procured a lumber inspector to examine the lumber and measure it. This inspector testified that he found a little over 70,000 feet of lumber No. 3 common and better, but that this was not trimmed in accordance with the contract, and a considerable quantity of it was not sawed in accordance with the directions which the plaintiff and his agents admit were given. The plaintiff and his agents admit that the directions were to saw the lumber into inch boards in all cases where the logs could be so sawed, and that in cases where this could not be done it was to be cut into export, which it appears means timber 2 inches thick or more, or switch ties; that a considerable amount of this lumber which the plaintiff tendered on the contract, instead of being inch boards, was inch and a quarter boards, and inch and a half boards. Upon the trial of the case the plaintiff admitted that the quantity of lumber which he tendered was far short of that he had contracted to deliver, but he stated that he could make up the deficiency from lumber to be cut from other timber owned by him. He also contended that the lumber offered was manufactured in a workmanlike manner, and in accordance with the terms of the contract, and his sawyers made like statements, but they all admit that it was not trimmed, and the contract expressly provides that this should be done. According to the plaintiff's own evidence, none of it was ever trimmed until long after the suit was brought, and then only a very small part of it. The defendant filed by way of offset a claim for the two advancements made by it, and also denied the plaintiff's right to recover for the lumber tendered. The jury found that the plaintiff was not entitled to recover for this lumber, and that the defendant was entitled to recover its advancements less the value of the carload of hickory above referred to, and upon this verdict the court rendered judgment.

It is quite well settled that where one buys goods by a particular description the seller warrants that the goods

will answer that description, and the buyer is under no
obligation to accept them unless they do answer the descrip-
tion.  Williston on Sales, § 604; *Appalachian Power Co.* v.
*Tate,* 90 W. Va. 428; *Regent Waist Co.* v. *O. J. Morrison
Department Store Co.,* 88 W. Va. 303.  It is likewise very
well settled that where the seller agrees to deliver a definite
amount of goods the buyer is under no obligation to accept
a different quantity than that contracted for.  Williston on
Sales, § 459; *Greenbrier Lumber Co.* v. *Ward,* 36 W. Va.
573.  In this case, admittedly the plaintiff did not tender
the amount of lumber which he contracted to deliver to the
defendant, nor was the lumber tendered manufactured in
accordance with the contract of the parties.  For either or
both of these reasons the defendant was entirely justified in
declining to receive it, and the court should have given the
defendant's peremptory instruction upon this element of
the case.  The evidence that the lumber offered was not in
accordance with the contract is overwhelming.  The plaintiff
and his witnesses admit it, but the defendant, in addition to
this, introduced a number of witnesses who testified that
not only was the lumber not trimmed and edged, but that
the manufacture of it was anything in the world but work-
manlike; that many of the boards were much thicker on one
end than on the other, there being as much in some instances
as an inch difference in the thickness of the boards; that
they were not trimmed down to the same width on each
end, and that the rough ends were not trimmed off, and
that not over five per cent. of the lumber in the piles would
answer the requirements of the contract.  It is not neces-
sary to consider the defendant's evidence as the plaintiff
by his evidence admits that the lumber offered was not manu-
factured in accordance with the terms of the contract, and
was not the amount agreed by him to be delivered.  Upon
the trial of the case he suggested that he had another tract
of timber from which he was willing to make up the de-
ficiency, and that the defendant was not justified in refusing
to receive this lumber, because of such deficiency.  Whether
or not the defendant could be compelled to take lumber

manufactured at another site we do not consider at all material. The fact that a party is able to perform his contract does not give him the right to sue upon the basis of full performance. He must actually perform, or at least tender performance before he can maintain such suit. In this case the plaintiff tendered the lumber in controversy in satisfaction of his contract. According to his own testimony he advised defendant's agent that he was through with the sawing under the contract, and the sole question here is, was the defendant justified in rejecting this lumber as a satisfaction of that contract? As before stated, there is no doubt of its right in this regard.

Nor can defendant's right to recover the advancements be questioned. It paid this money to the plaintiff under the terms of the contract upon the assumption that the plaintiff would comply with his contract, and furnish the lumber called for thereby. When the plaintiff failed in this regard the defendant, of course, had a right to recover the advancements, and might accomplish that purpose by filing an offset in this suit.

We find no error in the judgment complained of, and the same is affirmed.

*Affirmed.*